1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   PATRICK NEILL,                            No. 1:23-cv-00910-SAB (PC)

12              Plaintiff,                      ORDER DIRECTING CLERK OF COURT TO
                                                RANDOMLY ASSIGN A DISTRICT JUDGE
13         v.                                   TO THIS ACTION

14   STEPHANIE CLENDENIN, et al.,               FINDINGS AND RECOMMENDATIONS
                                                REGARDING DEFENDANTS' MOTION TO
15              Defendants.                     DISMISS

16                                              (ECF No. 14)

17

18        Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to

19   42 U.S.C. § 1983.

20        Currently before the Court is Defendants' motion to dismiss, filed April 26, 2024.

21                                             .

22                                            I.

23                                    **BACKGROUND**

24        Plaintiff, a civil detainee, is proceeding on his Fourteenth Amendment claims that: (1) he

25   was not provided mental health treatment; and (2) he was subjected to disparate treatment that

26   amount to improper punishment.

27   ///

28
                                              1

1    Defendants filed the instant motion to dismiss on April 26, 2024.  (ECF No. 14.)  Plaintiff

2    filed an opposition and request for judicial notice on June 14, 2024.  (ECF Nos. 18, 19.)

3    Defendants filed a reply and opposition on June 24, 2024.  (ECF Nos. 20, 21.)

**II.**

**DISCUSSION**

**A.    Legal Standard**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

**B.    Allegations of Complaint**

Plaintiff states that he is a "non-adjudicated Sexually Violent Predator" who was sent to the Department of State Hospitals – Coalinga ("DSH-Coalinga") on March 1, 2021. (ECF No. 1 at 3, ¶ 8. He names DSH-Coalinga employees Stephanie Clendenin, Director; Brandon Price,

Executive Director; Dr. Cory Fulton, Chief Psychologist; Dr. Scott van de Putte, Senior

Psychologist; and Frank Maul, Chief of Rehab Therapy as Defendants in this action. Id. at 2-3, ¶¶

3-6.  He sues Defendants in their official capacities. Id.

Plaintiff contends Defendants violated his Fourteenth Amendment right to due process

when they collectively, via acts and omissions, failed to properly staff DSH-Coalinga with

enough psychologists to provide psychotherapy services, and failed to reduce the risk of violence

and harm resulting from said practice. (ECF No. 1 at 17, ¶ 68, 25.)  Plaintiff also alleges that his

Fourteenth Amendment rights were violated because Defendants properly staffed the treatment

groups for "penal code offender", or criminal patients that had mental health disorders, but failed

to do so for him. (ECF No. 1 at 17, ¶¶ 68-69.)  The criminal offender treatment groups, Plaintiff

claims, were "consistent and uninterrupted." Id. at 17, ¶ 69.

Plaintiff alleges Defendants' acts and omissions violated his right to advance in the Sex

Offender Treatment Program ("SOTP"), preventing him from "gain[ing] his liberty from being

civilly detain[ed]." (ECF No. 1 at 25 (brackets added).)  He also contends that because of the

different treatment he has been subjected to punishment because his condition of confinement is

more restrictive than that of inmates in county jails and prisons. (ECF No. 1 at 17, ¶ 68, 25.)

### C.    Plaintiff's Request for Judicial Notice

Plaintiff requests judicial notice of the following documents: (1) his medical record; (2)

Sex Offender Treatment Program at CDCR; (3) Declaration of Dr. Davis Thornton from Alameda

County Superior Court Case No. 20-MH-000002; and (4) copy of official court transcript of DR.

Pamela Yates from Alameda County Superior Court Case No. 175143, July 21, 2023.  (ECF No.

19.)

In a motion to dismiss, there are only two exceptions to the requirement that extrinsic

evidence not be considered: 1) a court may consider documents if their authenticity is not

contested and the complaint relies on them, and 2) a court may take judicial notice of a public

record. Lee v. City of Los Angeles, 250 F.3d 668, 688-689 (9th Cir. 2001) (finding that the court

erred because it relied on extrinsic evidence and took judicial notice of disputed facts in a motion

to dismiss a claim under 42 U.S.C.A. §1983 claim). The Court may not take judicial notice of

1   reasonably disputed facts. Id. at 689.  Moreover, "Judicial notice is inappropriate where the facts

2   to be noticed are irrelevant and not needed to resolve the motions before the Court." Amazon.com

3   Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc., 631 F. Supp. 3d 950, 962 (W.D. Wash. 2022).

4        Plaintiff's request must be denied as the documents are subject to dispute as it unclear

5   where they originated and are not accompanying by a certificate of authenticity.  In addition, the

6   documents are not referenced in the operative complaint.  (See ECF No. 1.)   Rather, Plaintiff

7   attempts to augment his complaint by requesting that the Court take judicial notice of the

8   documents. Accordingly, Plaintiff's request for judicial notice is denied.

9        **D.    Analysis of Defendants' Motion**

10       Defendants argue Plaintiff has failed to allege a cognizable constitutional right or any

11  circumstances that could amount to deliberate indifference.  In addition, Plaintiff's claims are

12  barred by sovereign immunity, and the Court must defer to the State's discretion when

13  implementing policies in the area of public health.

14       In opposition, Plaintiff argues that although he has not been adjudicated as an SVP, he has

15  been diagnosed with three mental disorders which require mental health treatment in a secured

16  facility.  Plaintiff claims Defendants violated his constitutional rights by failing to provide a

17  sufficient number of psychologists in the SOTP, which amounts to disparate treatment resulting

18  in improper punishment.

19       In response, Defendants argue that Plaintiff has not established a constitutional right to the

20  SOTP, and the denial of access to the SOTP cannot be improper without a constitutional right

21  thereto.

22       Under the Due Process Clause of the Fourteenth Amendment, civil detainees are entitled

23  to mental health treatment that gives them a realistic opportunity to be cured and released.

24  Ohlinger v. Watson, 652 F.2d 775, 778 (9th Cir. 1980); Sharp v. Weston, 233 at F.3d 1166, 1172

25  (9th Cir. 2000). "Because the purpose of confinement is not punitive, the state must also provide

26  the civilly-committed with 'more considerate treatment and conditions of confinement than

27  criminals whose conditions of confinement are designed to punish.' " Sharp, 233 F.3d at 1172

28  (quoting Youngberg v. Romeo, 457 U.S. 307, 233 (1982)). "Lack of funds, staff or facilities

1   cannot justify the State's failure to provide [such persons] with [the] treatment necessary for

2   rehabilitation." <u>Oregon Advocacy Center v. Mink</u>, 322 F.3d 1101, 1121 (9th Cir. 2003) (brackets

3   in original) (quoting <u>Ohlinger</u>, 652 F.2d at 779).

4         1.     <u>Constitutional Right to Treatment</u>

5        Defendants' motion to dismiss first argues that Plaintiff's Fourteenth Amendment Claim

6   for violation of the right to curative treatment should be dismissed because "the SVPA does not

7   establish a constitutional right to treatment for pre-trial detainees."1 (ECF No. 10, at p. 7).

8   Defendants concede that "[u]nder the Due Process Clause of the Fourteenth Amendment, states

9   are required to provide civilly committed individuals with access to mental health treatment that

10  gives them a realistic opportunity to be cured and released," (ECF No. 10, p. 7), but go on to

11  argue nonetheless that Plaintiff is not entitled to such treatment because he is detained as a pre-

12  adjudication SVPA detainee, rather than a post-commitment SVPA detainee. Defendant relies on

13  the language of the SVPA and argues that only individuals committed as SVPA detainees are

14  entitled to treatment under that statute. Thus, Defendants argue "as a pretrial detainee, Owens has

15  no automatic right to treatment under the SVPA." (ECF No. 10, p. 8).

16       In response, Plaintiff concedes that the SVPA itself does not mandate treatment for him,

17  but he argues that other provisions of California state law create a right for mental health

18  treatment, and in any event, he has a constitutional right to treatment. (ECF No. 18 at 4.)  He

19  relies on the Fourteenth Amendment and the Youngberg professional judgment standard

20  applicable to such claims. (<u>Id.</u> at 5.)

21       Contrary to Defendants' argument, Plaintiff's claims in the operative complaint are based

22  on the Fourteenth Amendment, not the SVPA.  Thus, Defendants' argument that SVPA does not

23  provide Plaintiff a statutory right to treatment is unfounded.

24       Consequently, Defendants' reliance on <u>People v. Ciancio</u>, 109 Cal.App.4th 175, 181

25  (2003), as modified on denial of reh'g (June 27, 2003) is misplaced.  Defendants argue that under

26  <u>Ciancio</u> "there is no statutory provision mandating treatment before trial and designation as an

27  SVP." <u>Id.</u> at 181.  However, the Court in <u>Ciancio</u> did not analyze what if any treatment is required

28  for pre-adjudication civil detainees, especially those detained after a probable cause determination

1    pursuant to § 6602, under the Due Process clause.  Accordingly, Ciancio is inapposite.

2        Defendants also cite to Hubbart v. Superior Court, stating, in part, "there is no broad

3    constitutional right of treatment for persons involuntarily confined as dangerous and mentally

4    impaired, at least where 'no acceptable treatment exist[s]' or where they cannot be 'successfully

5    treated for their afflictions.' " Hubbart v. Superior Court, 19 Cal. 4th 1138, 1166 (1999).

6    However, the California Supreme Court specifically noted that it rejected Hubbart's suggestion

7    that the Legislature cannot constitutionally provide for the civil confinement of dangerous

8    mentally impaired sexual predators unless the statutory scheme guarantees and provides

9    "effective" treatment." Id. at 1164.  Therefore, the holding in Hubbart did not alter the

10   constitutional standard that "[u]nder the Due Process Clause of the Fourteenth Amendment, states

11   are required to provide civilly committed individuals with access to mental health treatment that

12   gives them a realistic opportunity to be cured and released." Ohlinger v. Watson, 652 F.2d 775,

13   778 (9th Cir. 1980); Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing Ohlinger).

14       Accordingly, Plaintiff's allegations state a cognizable claim under this applicable legal

15   standard.

16       2.    Deliberate Indifference to Serious Medical Need

17       Defendants also argue that Plaintiff fails to allege an objective serious medical need,

18   deliberate indifference to that need, nor an injury from failing to obtain treatment, under the

19   Eighth Amendment legal standards.  In support, Defendants cite to Estelle v. Gamble, 429 U.S.

20   97 (1976), to argue Plaintiff failed to allege a serious medical need.

21       However, it is clearly established law that the substantive due process protections of the

22   Fourteenth Amendment, not the Eighth Amendment's deliberate indifference standards on which

23   Defendants rely, are applicable to Plaintiff's claims.  Indeed, in Jones v. Blanas, it was held that

24   for a pre-adjudication civil detainee to prevail under the SVPA, "the confined individual need not

25   prove 'deliberate indifference' [under the Eighth Amendment] on the part of government

26   officials." Jones v. Blanas, 393 F.3d 918, 934 (9th Cir. 2004); Frank v. Fresno Cnty., No. 1:12-

27   CV-01026-AWI, 2015 WL 1201284, at *3 (E.D. Cal. Mar. 16, 2015) ("Like pretrial criminal

28   detainees, pre-commitment civil detainees may avail themselves of the more protective fourteen

1    amendment standard, rather than the Eighth Amendment, when challenging their conditions of

2    confinement.") (internal citation and quotation marks omitted).  Accordingly, Defendants'

3    arguments based on deliberate indifference under the Eighth Amendment do not provide a basis

4    to dismiss Plaintiff's claims.[1]

5        In this instance, Plaintiff's Fourteenth Amendment claims are governed by the <u>Youngberg</u>

6    professional judgment standard in <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-23 (1982).  With

7    regard to <u>Youngberg</u> the Ninth Circuit has stated:

8        In <u>Youngberg v. Romeo</u>, 457 U.S. 307, 310, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the
        Supreme Court was confronted with an involuntarily committed mental patient in a state
9        hospital who alleged that, while at the hospital, he had been injured on numerous
        occasions "by his own violence and by the reactions of other residents to him." ...
10        Under <u>Youngberg</u>, the Constitution requires that hospital officials, in order to protect a
        patient's right to safe conditions, exercise professional judgment. <u>Id.</u> at 321–22.  The
11        Court explained that liability may be imposed for failure to provide safe conditions "when
        the decision made by the professional is such a substantial departure from accepted
12        professional judgment, practice, or standards as to demonstrate that the person responsible
        actually did not base the decision on such a judgment." <u>Id.</u> at 323. <u>Youngberg</u>, then,
13        created a standard whereby whether a hospital administrator has violated a patient's
        constitutional rights is determined by whether the administrator's conduct diverges from
14        that of a reasonable professional. We refer to this as the "<u>Youngberg</u> professional
        judgment standard." In distinguishing this standard from the "deliberate indifference"
15        standard used in Eighth Amendment cruel and unusual punishment cases, the Youngberg
        Court noted that "[p]ersons who have been involuntarily committed are entitled to more
16        considerate treatment and conditions of confinement than criminals whose conditions of
        confinement are designed to punish." <u>Id.</u> at 321–22, 102 S.Ct. 2452 (emphasis added). The
17        Court approvingly cited the <u>Youngberg</u> professional judgment standard in <u>County of
        Sacramento v. Lewis</u>, 523 U.S. 833, 852 n. 12, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998),
18        noting that "[t]he combination of a patient's involuntary commitment and his total
        dependence on his custodians obliges the government to take thought and make

19

20

21

22    [1] The Court also rejects Defendants' argument that Plaintiff failed to establish a serious medical need or any resulting
    injury.  Plaintiff's civil commitment is based on a diagnosed mental disorder requiring psychiatric treatment, and the
23    SVPA expressly conditions confinement on the presence of such a disorder. Cal. Wel. & Inst. § 6600(a)(1); <u>Hubbart</u>,
    19 Cal. 4th at 1157 ("[A] person cannot be adjudged an SVP unless he 'currently' suffers from a diagnosed mental
24    disorder ....") (citing § 6600(a)); <u>see also Id.</u> at 1166 ("The Act is based on the premise that SVP's suffer from
    clinically diagnosable mental disorders which require psychiatric care and treatment ..."). By detaining Plaintiff
25    under the SVPA, the State has already conceded that he has a serious medical need requiring psychiatric treatment.
    <u>Hubbart</u>, 19 Cal. 4th at 1139.  In addition, Defendants overlook the fact that Plaintiff cannot be released from civil
26    commitment until he has been successfully treated. "The SVPA is also designed to ensure that the committed person
    does not 'remain confined any longer than he suffers from a mental abnormality rendering him unable to control his
27    dangerousness.' " <u>Hubbart</u>, 19 Cal. 4th at 1177 (quoting <u>Kansas v. Hendricks</u>, 521 U.S. 346, 361 (1997). If an SVPA
    detainee is adjudged to be "safe to be at large," immediate release is statutorily required. <u>Id.</u> The denial of treatment
28    prolongs Plaintiff's involuntary confinement, which itself constitutes an injury.

reasonable provision for the patient's welfare."

Relying upon Youngberg, the Ninth Circuit has repeatedly recognized the Fourteenth Amendment right of involuntarily committed patients to safe confinement conditions. See Ammons v. Washington Dept. of Social and Health Services, 648 F.3d 1020, 1027–28 (9th Cir. 2011) (footnotes omitted).

Here, Plaintiff alleges that Defendants have not adequately staffed DSH-Coalinga with enough psychologists, and that they are using non-licensed rehabilitation therapists and behavioral specialists in treatment plans.  Plaintiff contends that the Sex Offender Treatment Program at a facility like DSH-Coalinga must employ either a licensed psychologist or someone who is supervised by a licensed psychologist. (ECF No. 1 at 7-8, ¶ 28.)  He further contends that Defendants' use behavioral therapists for certain programming is improper because: (1) a behavioral specialist "is not licensed to practice psychology," and (2) "most of the thirty-six behavioral specialists [at DSH-Coalinga] do not have any sex offender treatment background [nor] are [they] certified or otherwise credentialed in this area." Id. at 8-9 ¶¶ 30-31 (brackets added).

Plaintiff argues further that Defendants' use of rehab therapists as Sex Offender Therapy Program lead facilitators to provide psychotherapy services to him, also violates both DSH-Coalinga's policy as well as state law which requires that primary facilitators be clinicians who are trained to do psychotherapy. (ECF No. 1 at 8-9, ¶¶ 29, 34.)  Finally, Plaintiff references a report in which a state audit and evaluation body is alleged to have "raised concerns about DSH's staffing." Id. at 12, ¶ 49. According to Plaintiff, the report "noted that DSH was providing far less group therapy than it should," and that "[c]are was widely inconsistent and did not include certain types of treatment, even when patients require such treatment." Id. (brackets added).

Ultimately, Plaintiff asserts that going through the four modules of the SOTP can take as much as seven years, if not more. (ECF No. 1 at 6-7, ¶¶ 21, 25 (Plaintiff stating Module 1 "may last up to one quarter"; Module 2 "may last anywhere from three to five years, "and Module 3 "may last up to one or two years.").  "Defendants," Plaintiff argues, "have abdicated their responsibility to ensure the facility is properly staffed and that treatment team services are

1  consistent and in compliance with state law." Id. at 13, ¶ 52.  As a result, he claims his enrollment

2  in treatment and in treatment teams has been unlawfully stalled and that his treatment plan has

3  become outdated. Id. at 13, ¶ 53.

4          Thus, without deciding whether professional judgment was exercised in this case,

5  Plaintiff's allegations are sufficient to state a claim under the Youngberg standard, at the pleading

6  stage. See Ray Robertson v. Contra Costa Cnty., No. 15-CV-02549-WHO, 2016 WL 4259135, at

7  *5 (N.D. Cal. Aug. 12, 2016) ("County Defendants may ultimately be able to establish, as a

8  matter of law, that the decisions regarding Robertson's mental health care were within the scope

9  of 'professionally acceptable choices.' Youngberg, 457 U.S. at 323. But they will have to do so

10  after the parties have had more of an opportunity to develop the factual record.").

11          3.      Disparate Treatment Amounting to Improper Punishment

12          Defendants argue the type of medical treatment others get is not relevant to a Fourteenth

13  Amendment claim for inadequate medical care under the third element of deliberate indifference,

14  citing to Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018).

15          However, the following substantive due process standard applies in this instance:

16          The case of the individual confined awaiting civil commitment proceedings implicates the
        intersection between two distinct Fourteenth Amendment imperatives. First, "[p]ersons
17      who have been involuntarily committed are entitled to more considerate treatment and
        conditions of confinement than criminals whose conditions of confinement are designed to
18      punish." Youngberg, 457 U.S. at 321–22, 102 S.Ct. 2452. Second, when the state detains
        an individual on a criminal charge, that person, unlike a criminal convict, "may not be
19      punished prior to an adjudication of guilt in accordance with due process of law." Bell,
        441 U.S. at 535, 99 S.Ct. 1861 (emphasis added); see also Demery v. Arpaio, 378 F.3d
20      1020, 1029 (9th Cir.2004) ("[T]he Fourteenth Amendment prohibits all punishment of
        pretrial detainees."). As civil detainees retain greater liberty protections than individuals
21      detained under criminal process, see Youngberg, 457 U.S. at 321–24, 102 S.Ct. 2452, and
        pre-adjudication detainees retain greater liberty protections than convicted ones, see Bell,
22      441 U.S. at 535–36, 99 S.Ct. 1861, it stands to reason that an individual detained awaiting
        civil commitment proceedings is entitled to protections at least as great as those afforded
23      to a civilly committed individual and at least as great as those afforded to an individual
        accused but not convicted of a crime.
24

25

26  Jones v. Blanas, 393 F.3d 918, 931–32 (9th Cir. 2004).  The Ninth Circuit has held that "when a

27  SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in

28  which his criminal counterparts are held, we presume that the detainee is being subjected to

                                            9

1    'punishment.' " <u>Id.</u> at 932.  Thus, Defendant reliance on <u>Gordon v. Cnty. of Orange</u>, 888 F.3d

2    1118, 1124 (9th Cir. 2018), which discussed the standard applicable to claims of pretrial

3    detainees, is inapposite.  Indeed, <u>Jones</u> specifically states, "civil detainees retain greater liberty

4    protections than individuals detained under criminal process." <u>Jones</u>, 393 F.3d at 932.

5           Plaintiff reiterates that Defendants have not adequately staffed DSH-Coalinga with

6    enough psychologists to provide psychotherapy services, claiming that they have made his

7    conditions of confinement more restrictive than those of inmates in county jails and prisons. (ECF

8    No. 1 at 17, ¶ 68.)  Plaintiff references a treatment needs report he has obtained which confirms

9    that prior to the COVID-19 pandemic, Defendants were aware of and participated in the reduction

10   of clinical psychologists from two per unit to one per unit. This policy, Plaintiff asserts,

11   eliminated his monthly treatment conferences only to quarterly ones.  (ECF No. 1 at 13, ¶ 51.)

12   He then states that Defendants' written policy permitted penal code offenders with mental health

13   disorders to be fully provided with the service, and that this was not what he was offered. <u>Id.</u>

14          Treating criminal offenders who are, in part, being detained for punitive reasons better

15   than civil detainees who have not been convicted of a crime, effectively amounts to Plaintiff

16   being punished. <u>See</u> <u>Jones</u>, 393 F.3d at 932, 934 (stating conditions of confinement are

17   presumptively punitive if they are "identical to, similar to, or more restrictive than" those in

18   which criminal counterparts are held).  Assuming the truth of Plaintiff's allegation, his access to a

19   clinical psychologist is reduced to half of what criminal offenders could access constitutes a

20   restriction which is excessive in relation to any non-punitive purpose Defendants had for

21   imposing the policy. <u>See</u> <u>Jones</u>, 393 F.3d at 933-34.

22          4.      Deference to State's Discretion

23          Defendants argue the Court must defer to the State's discretion in establishing and

24   implementing policies in the arena of public health.

25          While DSH may enjoy "wide latitude" in developing its treatment program, such

26   discretion is not absolute. The provision of treatment during civil commitment is the primary

27   reason why SVPA has been found constitutional. "The Act is based on the premise that SVP's

28   suffer from clinically diagnosable mental disorders which require psychiatric care and treatment."

1    <u>Hubbart</u>, 969 P.2d at 602). Treatment is central to the justification for the SVPA and is written

2    into the statute:

3
> The facility designated by the community program director may be a state hospital, a local
4    treatment facility, a county jail, or any other appropriate facility, so long as the facility can
> continue the person's program of treatment, provide adequate security, and minimize
5    interference with the person's program of treatment.

6    Cal. Penal Code § 1610(b); <u>see also</u> WIC § 6604 ("the person shall be committed for an

7    indeterminate term ... for appropriate treatment and confinement in a secure facility"). Thus, the

8    DSH's discretion in developing a treatment program does not negate Plaintiff's Fourteenth

9    Amendment right to be free from punishment, which is decided in part by comparison with

10   similarly situated criminal detainees.

11         5.    <u>Sovereign Immunity</u>

12         Defendants argue that they are entitled to sovereign immunity because the complaint fails

13   to establish a nexus between each of the Defendants' authority and the alleged right being

14   violated.

15         However, for the reasons explained above, Defendants are not entitled to sovereign

16   immunity under the Eleventh Amendment as the core of Plaintiff's complaint is the denial of

17   adequate mental health treatment, not the specific staffing requirement.  Indeed, Plaintiff alleges

18   that each of the Defendants was in a position that enabled him/her to know of DSH-Coalinga's

19   deficient policies and/or customs, yet they failed to do anything to change or improve them.

20   (ECF No. 1 at 13-17, ¶¶ 52-67.)

21         Accordingly, Defendants' motion to dismiss the complaint for failure to state a cognizable

22   claim for relief should be denied.

23                                      **III.**

24                        **ORDER AND RECOMMENDATION**

25         Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly

26   assign a District Judge to this action.

27         Further, it is HEREBY RECOMMENDED that Defendants' motion to dismiss the

28   complaint be denied.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 28, 2025**

STANLEY A. BOONE
United States Magistrate Judge

12